IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JULIO GERARDO GOMEZ PEREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-02859-N |
| | § | |
| RICARDO RAFAEL ORTIZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

This Order addresses Plaintiff Julio Gerardo Gomez Perez's motion to remand [12]. Because Defendant Goya Food Inc. ("Goya") has shown that service of process was not made on Defendant Ricardo Rafael Ortiz before Goya removed this case, the Court denies the motion to remand.

### I. ORIGINS OF THE MOTION

This is a trucking collision case. Plaintiff Perez alleges he was standing on the shoulder of a highway, in front of a disabled vehicle, when a truck driven by Defendant Ortiz hit the disabled vehicle and caused a tire from the truck to impact Perez. Pl.'s Orig. Pet. 2 [1-5]. Perez further alleges Ortiz was acting within the course and scope of his employment for Defendants Goya and Richard's Reliable Transportation LLC ("Richard's") at the time of the accident. *Id.* at 3. Perez asserts claims for negligence, respondeat superior liability, negligent entrustment, and punitive damages against these defendants. *Id.* at 3–8.

MEMORANDUM OPINION AND ORDER – PAGE 1

Perez filed this lawsuit on October 11, 2024. *Id.* at 1. Goya removed the case to this Court on November 14, 2024, asserting diversity jurisdiction. Notice of Removal 1 [1]. Goya alleges that it is a citizen of Delaware and New Jersey, Richard's is a citizen of Texas, Ortiz is a citizen of Texas, and Perez is a citizen of Mexico. *Id.* at 2. Goya further notes that Perez seeks more than $1,000,000 in relief according to his complaint. *Id.* Perez moves to remand this case to state court, arguing the forum-defendant rule prevents Goya from removing this case. Pl.'s Br. 8–9 [13].

The removal statute provides that a diversity case "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Here, Perez argues that Defendant Ortiz, a Texas citizen, was served with process on November 7, 2024 — seven days before Goya removed the case. *Id.* Perez submitted the signed return of service and an affidavit from the process server, Foluso Odeyale, in support of this argument. *See* Pl.'s Br. Ex. D [13-1] (affidavit); Notice of Removal Ex. D-9 (return of service). In opposition, Goya submitted declarations of Ortiz and Ortiz's mother — Elsa Carmina Ortiz-Arroyo — stating that Ortiz-Arroyo received the papers, and Ortiz was not home at the time of purported service. *See* Def.'s Appx. 4–7 [17]. Recognizing the stark factual dispute here, the Court held an evidentiary hearing on the issue of service on Defendant Ortiz on May 28, 2025. The Court now makes the following findings of fact and conclusions of law.

## II.  LEGAL STANDARD FOR REMAND

A defendant may remove a state court suit only if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a). The removing defendant bears the

MEMORANDUM OPINION AND ORDER – PAGE 2

burden of establishing federal jurisdiction. *St. Paul Reins. Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). The Court must determine whether jurisdiction exists by considering the claims in the plaintiff's state court petition as it existed at the time of removal. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). If the requirements for federal jurisdiction are not apparent from the plaintiff's state court petition, the removing defendant may present facts and evidence in its notice of removal or by affidavit to establish that jurisdiction existed at the time of removal. *See Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638–39 (5th Cir. 2003); *see also Gasch ex rel. Z.G. v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 283 n.27 (5th Cir. 2007) (noting that a court considering a motion to remand "may pierce the pleadings and consider summary judgment evidence" (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc); and *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 545 (5th Cir. 2004))). "Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quoting *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

### III. THE COURT FINDS THAT ORTIZ WAS NOT SERVED AT THE TIME OF REMOVAL

Reviewing the evidence adduced at the hearing and attached to the parties' motions, the Court finds that Ortiz was not served with process before Goya removed this case.

#### A. Testimony of Foluso Odeyale

Plaintiff's only witness is the process server who purports to have personally served Ortiz on the day in question — Foluso Odeyale. She testified that she went to an address

in Dallas, Texas, at 8:58 A.M. on November 7, 2024, to serve Ortiz. Odeyale stated that upon arriving at the address, she knocked on the door, "someone" came to the door, and Odeyale stated she had papers for Ricardo Rafael Ortiz. Hearing Tr. 7:4–18. Then, Odeyale says "he" (the person at the door) said "yes," Odeyale asked "Is that you?" and "he" again said "yes" and then accepted service. *Id.* at 7:16–24. She then proceeded to describe the person she served as "male, age 25 to 35, 5 foot 6 to 5 foot 8 tall, and with a weight of 160 to 180. He had an accent and mustache." *Id.* 7:25–8:3. Odeyale also recalled that a dark truck was parked at the address that day, and she identified a picture she took of the truck. *Id.* at 8:6–11, 10:1–7. She also positively identified Ortiz as the person she served when she was presented with pictures of Ortiz from the police officer's body-worn camera. *Id.* at 10:8–19.

On cross-examination, Odeyale stated that November 7th was her second attempt to serve Ortiz, and that she also took pictures around the address on her first attempt on November 5th. *Id.* at 11:3–7, 12:4–6. Odeyale admitted to not remembering whether the picture she took of the dark truck was taken on November 5th or November 7th. *Id.* at 13:10–19. However, on redirect, she did affirm the truck was parked there the date she served Ortiz. *Id.* at 14:4–7.

### B.  *Testimony of Ricardo Rafael Ortiz*

Goya first called Defendant Ortiz to testify about the purported service. Ortiz opened his testimony by stating he had never before seen Odeyale. *Id.* at 17:1–3. He went on to testify that the Dallas address where Odeyale delivered the papers was his parents' address and that he did not live there at that time. *Id.* at 17:4–8. He also confirmed that

his driver's license listed his parents' address as his residence, and that he had two vehicles registered at that address, including a Ford pickup truck. *Id.* at 17:9–14. However, he testified that he lived in Euless, Texas, at that time and then directly affirmed that he was never served with any legal process at his parent's address on November 7th, or any other day. *Id.* at 17:15–25.

Ortiz further testified that he was at work on the morning of November 7th, 2024, having worked from 4:59 A.M. to 11:00 A.M. and then from 11:30 A.M. to 1:26 P.M. that day. *Id.* at 19:25–20:3. He also confirmed that he had a full beard, not just a mustache, on November 7th and that he weighed 250 pounds at that time. *Id.* at 20:4–12. Ortiz went on to explain that his mother called him around 9:00 A.M. on November 7th and told him she had received the papers from a process server. *Id.* at 22:4–13. He additionally stated that the black Ford pickup truck registered to him was parked at his mother's house on November 5th but not on November 7th, contravening Odeyale's statement. *See id.* at 22:20–23. He recalled that he took the truck to go vote on November 5th and that he took the vehicle to a repair shop after voting where the truck stayed for a few months. *Id.* at 23:4–8.

Ortiz submitted two declarations in this case: one where he stated he did not know who received the papers and a second where he identified his mother as having received the papers. *See* Def.'s Appx. 4–5. Upon being questioned about this discrepancy, Ortiz explained that, at the time of the first declaration, he was focused on the fact that he did

MEMORANDUM OPINION AND ORDER – PAGE 5

not know anyone matching Odeyale's given description (male, 5'6"–5'8", 180 pounds, mustache) who lived at the address who could have received the papers. *Id.* at 22:6–9.

On cross-examination, Ortiz confirmed that he currently lives at the Dallas address, and did so at the time of the collision, but that on November 7, 2024, he lived with his then-girlfriend in Euless. *Id.* at 25:1–26:25. Ortiz also admitted that his mail was still being delivered to the Dallas address on November 7th. *Id.* at 28:10–15.

### C. Testimony of Elsa Carmina Ortiz-Arroyo

Finally, Goya called Ortiz's mother, Elsa Carmina Ortiz-Arroyo. She began by confirming that Ortiz lived with his girlfriend in Euless on November 7, 2024. *Id.* at 30:18–20. She then recalled being surprised around 8:25 A.M. when she heard a knock at the door and saw a woman standing outside with papers. *Id.* at 31:5–10. Ortiz-Arroyo opened the door and heard the woman ask: "Are you Ricardo Rafael Ortiz?" *Id.* at 31:11–17. She testified that she responded "yes" to that question because she knew Ricardo Rafael Ortiz, but that she then told the woman that Ortiz was not home at the time. *Id.* Ortiz-Arroyo recalled that the woman told her "it doesn't matter" and gave her the papers anyway. *Id.* Afterwards, Ortiz-Arroyo called Ortiz and told him to come home after work to get the papers, which he ultimately did. *Id.* at 31:20–32:2.

### D. Conclusions from the Evidence

Having received all of the evidence, both live testimony and admitted documents, the Court finds that Odeyale did not serve Defendant Ortiz on November 7, 2024, and instead delivered the papers to his mother, Ortiz-Arroyo. Witness credibility played an important role in this finding. During her testimony, Odeyale (appearing by

MEMORANDUM OPINION AND ORDER – PAGE 6

videoconference) repeatedly displayed body language indicating lack of trustworthiness, including persistent face-touching, looking away when speaking, nose scrunching, and lip biting. This body language was especially pronounced after Odeyale acknowledged that her return of service was signed under penalty of perjury and on cross-examination. Odeyale's testimony had multiple inconsistencies with Ortiz's testimony, including the differing physical descriptions of Ortiz, the fact that the black truck was parked there on November 7th, and the fact that she attested to serving process on a man and not a woman. Overall, the Court found Odeyale's testimony to be less than credible, and therefore gives it less weight.

At the same time, Ortiz appeared to be a credible witness. He answered questions clearly and concisely and displayed calm body language and tone during his examination. He provided plausible and unrebutted explanations for why he was not home at that time, and why the black truck was not parked there on November 7th. Discounting Odeyale's testimony, Ortiz's testimony is consistent with the other evidence in the record. Accordingly, the Court finds that his testimony is credible and assigns it more weight. The same goes for Ortiz-Arroyo, whom the Court finds to be credible based on her demeanor, tone, and the consistency of her testimony and the other credible evidence in the record.

Then, considering all the testimony and associated credibility, the Court finds that Odeyale did not serve Ortiz, but instead gave the papers to Ortiz-Arroyo, who informed Ortiz after the fact. The evidence here shows a process server on her second attempt, who saw a woman open the door, heard "yes" after a quick identification question, and simply chose to deliver the papers despite being told that the defendant was not home at that time.

MEMORANDUM OPINION AND ORDER – PAGE 7

While it is true that a "signed return of service constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence," *see People's United Equip. Fin. Corp. v. Hartmann*, 447 F. App'x 522, 524 (5th Cir. 2011) (unpub.) (per curiam) (quoting *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993)), the Court concludes that the evidence in this case is sufficient to overcome any presumption based on Odeyale's signed return of service.

### IV. THE COURT DENIES PEREZ'S MOTION TO REMAND

Perez presses only one basis for remand in his motion — that Ortiz was properly served before removal and therefore this case is nonremovable under the forum-defendant rule. *See* Pl.'s Br. 8–9. The relevant statute provides that a diversity case "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). So-called "snap removals," where an out-of-state defendant removes a case before an in-state defendant is served, are permitted under the plain language of the statute. *Tex. Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020). Therefore, because the Court has found that Ortiz was not served before Goya removed this case, the Court concludes that this forum-defendant rule does not apply, and that Goya's removal was therefore proper. The Court accordingly denies Perez's motion to remand.

### CONCLUSION

Because Goya has established that Ortiz was not served before removal and therefore that removal was proper, the Court denies the motion to remand.

Signed June 17, 2025.

_____
David C. Godbey
Chief United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 9